of America. Oral argument not to exceed 15 minutes per side. Mr. Rosenberg, you may proceed for the appellant. Good morning. Good morning. May it please the court, I would like to introduce Anna Williams, who is a very recently former law student at the West Virginia University College of Law. She has qualified and with the court's permission will present argument and we thank the court for allowing her to argue even though she graduated a couple of weeks ago. Thank you for appearing and we did grant you a motion for a special argument but I think you kind of fell into the deception of the rule and we recognize that a lot of our rules do have exceptions and I think that you qualified so we look forward to your argument. Good morning, your honors, and may it please the court, I would like to reserve three minutes for rebuttal. Very well. Mr. McCormick was plainly denied effective assistance of counsel. The record is clear that Attorney Roberts committed a per se violation of the duty to consult by testifying under oath that he never consults with clients following sentencing about an appeal. Furthermore, the evidence consistently and emphatically supports Mr. McCormick's right to appeal and thus this court should reverse. Turning to the first issue of the duty to consult, this court in Smith v. Ohio Department of Corrections announced that the constitutional duty to consult extends to after judicial proceedings have concluded. Was that a holding or a dicta? That was a holding, your honor. I thought it wasn't dependent on the outcome, they didn't grant abuse there, right? They didn't because of the notice there that the defendant in that case had received notice and then that the decision had been made and then waited, I believe, six months after that to file his motion. But the court there did maintain that the duty to consult extends to after sentencing because the constitution requires that counsel make objectively reasonable decisions pertaining to the representation and that includes extending to after to determine when an appeal should be filed. So in this case, Judge Van Tatenhove, as I understand it, gave your client a written notice of appeal, had him go over it with his counsel, say he understood it, and sign it, correct? That's correct. So is your argument really that he has to repeat that right afterwards or is it that he has to, what, ask him if he wants to appeal? What is, what's this very thing you want defense attorneys to do after a district court has gone through everything with him? You can't, you're not asking us to have him repeat any of that. We're asking him to discuss the advantages and disadvantages of taking an appeal after sentencing. In Flores Ortega, the Supreme Court defined consult to mean discussing the advantages and disadvantages and making a reasonable effort to discover the defendant's wishes. But presumably they did that before, at least your client said, and the district court credited that they did it, that there was a discussion before, and there were two instances he would want to appeal. One was trial-related, isn't an issue here, and two was I think he was unhappy with his sentence, if I remember correctly. And there's a dispute about that portion and whether he instructed him and the district court said didn't instruct him to appeal. There is a dispute about that. But again, it's our position that this, that the duty to consult, the lower courts here collapsed the Flores Ortega standards. The first prong of that is whether there is reasonably a rational defendant would want to appeal, and the second prong is whether this particular defendant reasonably demonstrated that he was interested in appealing. And the lower courts focused on the alleged reasonableness of the sentence that McClurk received rather than the efforts that Mr. McClurk made to reasonably demonstrate that he wished to appeal. So it is our position that that is legal error. The government hasn't responded to those points that we cited, those cases that this was legal error requiring de novo review. Again to that point that I wanted, that I spoke about earlier, Mr., excuse me, Attorney Docket Entry 456. He testified that he didn't, he didn't discuss the grounds for appeal with Mr. McCormick because quote, he didn't ask me, and that can be found on page ID 1715. Again this is not, this is not the proper standard. It's not constitutionally adequate. He didn't discuss with Mr. McCormick the advantages and disadvantages of filing an appeal, nor did he try to discover Mr. McCormick's desires and wishes with respect to appeal. Furthermore, it's our position that the open plea itself is the basis for demonstrating that Mr. McCormick reasonably demonstrated that he wished to appeal. I can't remember, did Judge Van Tatenhove ask him if he wanted to appeal? Yes, Mr. McCormick has consistently testified throughout that he did want to appeal in the event of a dispute. I'm sorry, no, no, no, I'm, it's a bad question. Did Judge Van Tatenhove, the judge on the case, ask the defendant if he wanted to appeal? I just don't remember. I believe he did, Your Honor, but he, the lower courts credited Attorney Roberts because they used the reasonableness factors to determine that he, a rational defendant, would not have wanted to appeal and that he didn't reasonably demonstrate he wanted to appeal. Oh, no, I see this is why this is a bad question. I mean, at the end of the sentencing hearing, I get it, I know what happened during the evidentiary hearing. At the end of the sentencing hearing, did he ask him if he wanted to appeal? I believe so, Your Honor. Okay, you are answering that. All right, thanks. Yes, and if I just may gloss on that point I was just discussing. The lower courts collapsed that standard by determining that because the sentence was reasonable that he didn't reasonably demonstrate that he wanted to appeal. And again, that's legal error there that requires an over-review. But furthermore, they collapsed the two floors Ortega standards to find that because of the reasonableness of the sentence that Mr. McCormick could not have either rationally wanted to appeal or that he reasonably demonstrated that he wanted to appeal. And furthermore, Mr. McCormick's open plea reserved his right to appeal the sentence regardless of what it was. It didn't depend on the sentence he received. So even under the, obviously our argument here isn't under the first prong of course, but again, Mr. McCormick could have appealed his sentence regardless of what it was. Furthermore, the government doesn't offer an explanation as to why Mr. McCormick would enter an open plea if he didn't wish to appeal. Indeed, Attorney Roberts testified on page ID 1709 that the only reason you do an open plea is to preserve your appellate rights, and that's the only benefit. So both parties here are plainly acknowledging that the goal of the open plea was to preserve Mr. McCormick's appellate rights. And furthermore... Well, I guess the government can speak to it, but I've never, that's news to me, frankly, that, and maybe Jeff's part knows better than the prosecutor, but I mean, is it common ground in this case that it would be sort of nonsensical to have an open plea if one were not planning to appeal? Based on Attorney Roberts' testimony, he acknowledged that's the only benefit. And beginning, at the beginning of the representation... What about, so the government will often require proffers and other things as part of a plea agreement if there's, I mean, what, remind me, was there a dismissal of extra counts here? There, well, I can speak to the sentence he received. He received 267 months, 276 months, excuse me. No, no, no, but was there, as part of the plea, the open plea, did he just plead straight up to the indictment? I can't remember. I thought maybe that's it, but I can... He, I'm sorry. That's okay. I think he did, but... I believe he did too, but I don't want to speak incorrectly, of course. No, I'll look. You go ahead. I'm sorry. No, that's okay. And again, I just want to emphasize that from the beginning of the representation, Mr. Attorney Roberts recommended an open plea to Mr. McCormick because Mr. McCormick expressed an interest in going to a jury trial instead so that he may preserve his appellate rights. So again, this open plea has been the fundamental basis for Mr. McCormick's understanding that he could appeal if, in the event of a disparity or if, even if just, if he wasn't satisfied with the sentence. There are also points that go to both the first issue, which I've been discussing, the second appeal, and the most prominent one is the argument pertaining to the co-defendants in Mr. McCormick's case. Mr. McCormick has remained consistent on this point that he has testified that he wanted to appeal in the event of a discrepancy between the sentence he received and the sentences his co-defendants received. And this is corroborated through record evidence by Attorney Roberts' own sentencing arguments, where he recommended that the sentence fall in line with the sentence of the co-defendants and that the criminal history of two of the co-defendants was the same as the criminal The government doesn't explain why Attorney Roberts would argue that the sentence should be similar if this wasn't discussed with Mr. McCormick prior. And Mr. McCormick, hearing these sentencing arguments, further cemented his belief that an appeal would be filed in the event of a disparity. So when the sentence was announced and Mr. McCormick received much more time than his co-defendants, it was Mr. McCormick's belief that an appeal would be filed. And thus, Attorney Roberts knew or should have known that Mr. McCormick wanted to appeal in the event of this disparity, which did indeed happen. What did the co-defendants get again? Mr. Shane, who is McCormick's son, he received 188, excuse me, 140, no, sorry. He received 188 months and Mr. Money received 144. Mr. Money is also a career offender. And again, this was Mr. McCormick's understanding that an appeal would be filed in the event of a discrepancy. Furthermore, I just want to emphasize that there are other inconsistencies in that internally in Mr. and Attorney Roberts' own testimony and as well as in his affidavit. First, he testified inconsistently on whether he spoke with Mr. McCormick after sentencing and what those conversations pertained to. At one point, he testified that he merely just read over Mr. – watched as Mr. McCormick read over his rights to appeal and left. At other points, he testifies that he told Mr. McCormick that he could appeal the sentence. At other points, he testifies that he doesn't remember if he told Mr. McCormick on the date of sentencing that he could appeal. And it's – at other points still, he testified that he told Mr. McCormick that his sentence was reasonable. But here again, his affidavit makes no mention of whether he told Mr. McCormick that his sentence was reasonable. Again, another inconsistency is that Mr. McCormick was told several times – or excuse me, Attorney Roberts told Mr. McCormick that he could appeal if he was unsatisfied with his sentence. But he later backtracks on that and testifies that he told Mr. McCormick he could appeal in the event of an absurd or crazy sentence, again, hiding behind the alleged reasonableness of the sentence. So, Mr. – or Attorney Roberts has been inconsistent throughout his testimony. So, what's the upshot of that inconsistency in your view? It is our position – well, actually, the Supreme Court has maintained in – excuse me, if I read these correctly – has maintained in Anderson v. City of Bessemer that a finding based on inconsistent, implausible, and contradictory testimony cannot be supported and is grounds for clear error. Okay. And again, this is the – express instruction element is a factual argument. We understand that requires clear error review. Right. Okay. Now, that's a good answer. Thank you. But again, there – with all these inconsistencies, it's our position that this clear error did happen here. And furthermore, it's our position that the lower courts failed to consider Attorney Roberts' significant health issues that he testified to in the evidentiary hearing. Of course, Mr. McCormick is sympathetic to these health issues, you know, as anyone would be. But the fact remains that counsel has a constitutional – has a duty to competently represent clients, especially when a direct appeal is at stake. And it is our position that this didn't happen here. And I see my time is running out, but I briefly just want to mention we also discussed the issue in our brief that because Mr. McCormick did not receive the appeal he was bargained for, that his open plea should be vacated. And the Supreme Court, as we heard earlier today, that plea agreements are contractual in nature. And here, it's our position that the plea agreement was frustrated because Mr. McCormick did not receive the open plea he bargained for. And the government fails to respond to the frustration of purpose argument in a meaningful way and therefore effectively concedes that he should no longer be bound by the open plea. But again, we understand, under the other two elements – other two arguments, the remedy is a delayed appeal. Okay. I see my time has expired. Thank you for your time. Okay. All right. Be present. You'll have your three minutes. Thank you. Good night. Oh, thank you, Your Honor. May it please the Court, I'd like to begin just by addressing a couple of the issues that were presented. First of all, there is no per se rule that consultation is required after sentencing. What do you do with Smith? Smith – when I read Smith, Smith actually cites to Flores Ortega, and it says that the constitutional duty to consult is triggered when you have a rational defendant who would want to appeal or when this defendant reasonably demonstrates an intent to appeal. Flores Ortega says in a vast majority of cases that would be something that's addressed after sentencing, but there is no per se rule. This Court, on two separate occasions, in Johnson and in Shelton, has found that the duty to consult was met and that lawyers behaved reasonably. Flores Ortega says that the counsel should figure out the defendant's wishes, right? They use some language like that. And how do you do that without doing it after the defendant knows what his sentence is? Here, the whole ball of wax is his sentence. Respectfully, I think that what Flores Ortega says is that they establish a standard because they're not going to apply the per se rule one way or the other. And so, yes, you have to ascertain your client's wishes, but this is all taken under the context of Strickland, which is that counsel has to behave in an objectively reasonable manner. And what Flores Ortega tells us is that this constitutional duty to consult is triggered only under these two circumstances, where a rational defendant would want to appeal or where this defendant reasonably demonstrates his desire or intent to appeal. I thought he had said that he thought he should get a sentence similar to that of the other co-defendants. Is that accurate? He did testify to that at the evidentiary hearing. That is implausible testimony, in my opinion, and I believe the district court found that as well. And that would be a credibility determination that is of great deference. I mean, you know, 267 months is a pretty long sentence not to have a conversation with the defendant after he gets, you know, that imposed on him. I mean, we're not, you know, as far as per se rules, I mean, like, you know, you get a, you know, a 23-year sentence or whatever it is. I mean, do you talk to the guy about it? It is a very long sentence, but it also was a very much expected sentence. And in this situation, Mr. McCormick actually faced a 240-month mandatory minimum. The idea that Mr. Roberts argued at sentencing for something less than that is not supported by the record. He argues for 200- 27 months in, you know, in federal prison is still a long time. It is a very long time. I mean, you see a lot of cases where now it's in the guideline range. They just do the mandatory minimum, you know. Right, absolutely. I think that under these circumstances, the judge, you know, this was a within guidelines range sentence. In fact, below guidelines range sufficiently. You know, I believe that he was given about five years less time than his guidelines range actually required, well, recommended. And in that situation, you know, I don't think anyone is actually disputing whether a rational defendant would have wanted to actually appeal this sentence. I think everyone is in agreement that this was a good result for Mr. McCormick, and that no rational defendant would have actually intended to appeal. I think what we're really talking about is whether Mr. McCormick reasonably demonstrated an interest to his counsel to appeal. But I thought- Under Flores-Otega, counsel has to make a reasonable effort to figure out what the defendant wants. And here, I thought your- I thought the attorney, Mr. Roberts, said he didn't even consult it. Mr. Roberts stated that after sentencing, he did not consult. But he also testified- You based it on the totality of the circumstances over the course of the representation. And this was a lengthy representation in which they had multiple conversations about sentencing. They had multiple conversations about what he might face and his appellate rights. And over the course of the proceedings, Mr. McCormick changed his behavior, where originally they were engaging in an open plea. There had been- Mr. McCormick disputed the factual predicate, the relevant conduct in the plea agreement offered by the government. And then after entering into the open plea, he then changed course, began cooperating with the government, and essentially conceded all of the facts that the government had put in the plea agreement. And so then, at that point, what Mr. Roberts testified to is, you know, all of these issues that you might have raised at sentencing are no longer issues. He's conceding all these facts. And that actually is similar to, I believe, Johnson and Shelton, where these issues that might have at one point been appealed are no longer at play at sentencing. No objections were raised at sentencing. You know, this was not something that really- this was not a contested sentencing, for the most part. And I don't think a reasonable attorney, under those circumstances, would have had any expectation that his client wanted to appeal the sentence. And that's what Mr. Roberts testified to. So I think that we have a situation here where, based on the totality of the circumstances, the course of the representation, Mr. Roberts behaved reasonably. And I don't think this is that different from this Court's opinions in Johnson and Shelton, which found that, you know, prior to sentencing, that consultation was sufficient. And that a reasonable attorney would expect an express statement that, you know, you should file an appeal on my behalf. Let me talk about just a couple of other things. This idea that there was legal error by considering the likelihood of success on appeal, I don't think that that's supported by the case law. Flores-Ortega says that non-frivolous grounds are highly relevant to the analysis. Non-frivolous grounds for appealing, highly relevant to determining whether this defendant- a rational defendant would want to appeal, or whether a reasonable defendant- Why did he plea to the indictment but to preserve his rights to appeal? Because the Eastern District of Kentucky often insists if you enter a plea, Bernie, you waive your rights. Correct. Yes. So why would he plea to the indictment straight up? So there are lots of reasons why somebody might plead to the entire indictment. Sometimes it's because they don't want to create the appearance that they're cooperating. I think in this case, what it was, was that Mr.- and this is in the test, you know, in the evidentiary record- that Mr. McCormick disputed the factual background, that he disputed the relevant conduct. There was an enormous discrepancy between- one week in this conspiracy that lasted seven months. And then after he entered his open plea, he said, well, actually, you were right the whole time. And so that's a very different- and I think that that, too, goes to Mr. McCormick's credibility. And the district court did take that into account. So to answer your question- The judge maintained he gave an acceptance of responsibility, right? Absolutely. He got his minus three levels. And to answer your question, that is a reason why I think Mr. Roberts' testimony is actually internally consistent. He's saying, yes, you know, he presented all this information. This was something I could raise at sentencing. This was a reason not to agree to that appellate waiver provision, which, if you're facing up to life imprisonment, the way that that provision is written, you would have no appeal, right? And so he's like, I'm going to open all this up so that we can fight this at sentencing. And then the defense is lost because the conduct is admitted. And so I think that that's really, like, the relevant conduct and the factual predicate is tied to the sentencing arguments here. And they didn't object to anything at sentencing. Just to address, again, the disparity of the sentences, Roberts recommended at sentencing 240 months. That's at page ID 966, 968 to 69, 992 to 96. He says that there is one portion in the sentencing transcript where he says that the sentence falls in line with his co-defendants. And a very important part of that is, as a matter of fact, it's going to be a lot more. What did the U.S. ask for? I believe that it asked for low end of the guidelines range, which would have been approximate. I think that the guidelines range was 327 to 382, and then in addition to the 60 months consecutive. So, again, a pretty substantial departure. And there was also things not for the public record, so there might have been a slight divergence there. I think 10%. And then I would also just say that the court addressed the health issues and the facts of the case, so I think that's something that it definitely considered. And the inconsistencies, I dispute that there are inconsistencies in Mr. Roberts' affidavit and his testimony. I thought Roberts said he didn't consult it before McCormick said he did, or am I mistaken? So I think that there's a distinction there. I think that what Roberts was testifying to was that he did not consult McCormick after the sentencing. There is a portion of his testimony that concerns the Advice of Rights form. Now, the Advice of Rights form happens at the end of sentencing, and there was some conversation. Roberts testified there was some conversation during the discussion of the Advice of Rights form, and then that's separate, too, after sentencing. So I think there's a conflation going on there. And the Advice of Rights, as Judge Van Tatenhove does it, is at the very end, correct? He gets done with sentence, he pronounces sentence, he asks if there's objections, he even takes, like, I think in this case Roberts asked that he be placed as close to whatever, a camera home or something, and then he says, okay, I'm now going to hand you this form to go over with your counsel. Correct, so there's the Advice of Rights, and then after the Advice of Rights is signed by both defendant and counsel, then he continues, Judge Van Tatenhove continues, he asks if the defendant has understood these proceedings, he also asks if the defendant has any questions, he asks the attorneys if there are any additional issues to be discussed, then he remands the defendant to custody and adjourns. So there is some additional, and I think that's where the confusion kind of, and it's not, I think that it is just that when you read the testimony, imprecise questioning and answers along those lines. And again, on the standard review, deferring to the credibility findings of the district court, and where there are two permissible views of the evidence, there cannot be clear error. And then as a final point, I realize that this is just a minor point, there is no plea agreement in this case, and so an open plea, there's no bargain for exchange in this situation, the only remedy is a delayed appeal. So there are no further questions. Thank you, Your Honors. Thank you. All right, three minutes for a vote. Thank you, Your Honors. First I want to address the point about my friend on the other side's argument that there is no per se rule or violation here. She mentioned the cases Johnson and Shelton, and both cases, both of those cases were decided over dissents, urging that Smith is binding precedent on this court. And furthermore, those cases are factually distinct from this case, because in Shelton there was no, there were significant appeal waivers there, versus Mr. McCormick retained his right to appeal a sentence in any capacity. And in Johnson, there was, the defendant there inconsistently testified about whether he expressly instructed his attorney to appeal or whether he wanted to appeal. And here again, Mr. McCormick has remained consistent that he wanted to appeal. Furthermore, as to the point about the totality of the circumstances element under Flores-Ortega, Flores-Ortega also mentioned that a court must consider whether the plea waived all of the defendant's appellate rights, because even in the event of a plea, there's still the potential, as is here in an open plea, to preserve those appellate rights. So that's another factor that must be considered in the totality of the circumstances element. Furthermore, again, just to reemphasize, the sentence with respect to the guideline range under the second Flores-Ortega factor, the reason one is for that sentence is not the inquiry. It's about whether the defendant reasonably demonstrated that he wished to appeal. Furthermore, Mr. McCormick could have appealed, could have gotten a lot of benefits by signing a plea deal. He opted for the open plea because he wished to preserve those appellate rights, and that was his key reason for doing so. Furthermore, as to the sentencing arguments, my friend on the other side pointed out that they're kind of inconsistent in a lot of ways, whereas we say that Attorney Roberts argued that the sentence should fall in line with the other defendants. We think these inconsistencies in these sentencing arguments alone further demonstrate the ineffectiveness that Mr. McCormick received based on the conflicting arguments that his own attorney made at sentencing. But nevertheless, we remain clear that Attorney Roberts testified that the sentence – or, excuse me, argued that the sentence should fall in line, and thus it was Mr. McCormick's understanding that the sentence would fall in line and that an appeal would be filed in the event of a disparity. If the Court has no further questions, I think those are all my points on rebuttal. Anything further? No? All right. Thank you, Ms. Williams. Ms. Williams and Mr. Rosenberg, I notice that you are appointed pursuant to the Federal Justice Act. We want to thank you for your service to the Court and for your very good representation of your clients.